

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**JOSHUA A. GABOR [PRO SE]**
1909 N. KENNEDY LN
NORMAL, IL 61721
(309)-452-6756
**PLAINTIFF,**

15CV8508
JUDGE ALONSO
MAG. JUDGE MARTIN

**VS.** **CASE NO :**____________________

**WEXFORD HEALTH SOURCES INCORPORATED** (Medical Provider)
501 Holiday Drive
Foster Plaza Four
Pittsburgh, PA 15220
**DR. VITALI KONONOV** (Psychiatrist)
16830 So. Broadway ST
P.O. Box 112
Joliet, IL 60434
**DR. JAGANNATH PATIL** (Psychiatrist)
Route 51 North
P.O. Box 500
Vandalia, IL 62471
**DR. REYNAL CALDWELL** (Medical Doctor)
Route 51 North
P.O. Box 500
Vandalia, IL 62471

RECEIVED

SEP 25 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**DEFENDANTS,**

**COMPLAINT UNDER THE CIVIL RIGHTS ACT TITLE 42 SECTION 1983 U.S. CODE**

## JURISDICTION AND PARTIES

1. **On October 3, 2013 - October 22, 2013 Joshua A. Gabor, Plaintiff [PRO SE]** was an inmate incarcerated at the **Stateville Correctional Center, Northern Receiving Center,** 16830 So. Broadway St, P.O. Box 112 Joliet IL 60434. This location is where complaint originated and took place. **Plaintiff** was then transferred to **Vandalia Correctional Center on October 22, 2013** until paroled on July 21, 2014.

2. **Defendant, Wexford Health Sources Incorporated** is the contracted medical provider for the **Illinois Department of Corrections** through duration of complaint. 10/3/13 - 7/21/14

3. **Defendant, DR. Vitali Kononov** employed by **Wexford Health Sources Incorporated** working as a **Psychiatrist** at **Stateville Correctional Center** through duration of complaint. 10/3/13 - 7/21/14

4. **Defendant, DR. Jagannath Patil** employed by **Wexford Health Sources Incorporated** working as a **Psychiatrist at Vandalia Correctional Center** through duration of complaint. 10/3/13 -7/21/14

5. **Defendant, DR. Reynal Caldwell** employed by **Wexford Health Sources Incorporated** working as a **Medical Doctor at Vandalia Correctional Center** through duration of complaint. 10/3/13 - 7/21/14

6. **Jurisdiction** is conferred upon this Court **pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343** because the matter in controversy is under the Constitution and Law of the United States.

7. **Supplemental jurisdiction** is conferred upon this Court **pursuant to 28 U.S.C. §1367.**

8. **Venue** is proper in this Court **under 28 U.S.C. §1391(b)** because a substantial part of the events that give rise to **Plaintiffs claims** took place within the **Northern District of Illinois**.

9. This Court has authority **pursuant to 42 U.S.C. §1983** to award appropriate actual, consequential, compensatory, and punitive damages,and has authority **pursuant to 42 U.S.C. § 1988** to award attorney fees and costs to successful civil rights plaintiffs.

# NATURE OF CASE

1. Plaintiff has a psychological history starting in February of 2007. Plaintiff was diagnosed with PTSD, Panic Disorder, General Anxiety w/agoraphobia and Major Depressive Disorder from years working as a Firefighter and personal tragic losses. Plaintiff received treatment from Psychiatrist DR. Gil Abelita and placed on medication Xanax, a benzodiazepine. Plaintiff was also treated with different antidepressants which proved to be ineffective with intolerable side effects. Plaintiff was placed on Social Security Disability for his debilitating diagnosis.

2. Plaintiff was arrested and detained in the McLean County Jail, IL on 2/6/13 for conspiracy to cultivate marijuana. After intake Plaintiff meet with county psychiatrist who done a psychological assessment, reviewed medication history and diagnosis of treating psychiatrist. County psychiatrist switched Plaintiff from Xanax, a short acting benzodiazepine to a longer half-life benzodiazepine Klonopin. Plaintiff transitioned to this medication fairly well, which proved to be effective and tolerable. Plaintiff was incarcerated in McLean County Jail until convicted and transported to the Illinois Department of Corrections on 10/3/13.

3. On 10/3/13 Plaintiff was incarcerated in the Illinois Department of Corrections(IDOC) Stateville Correction Center. Upon Incarceration Plaintiff met with Defendant DR. Vitali Kononov(Psychiatrist). Kononov met with Plaintiff for a period of ten minutes getting a psychological history. When Plaintiff advised Kononov that he was prescribed klonopin, a benzodiazepine, Kononov stated "you will not be receiving klonopin in IDOC". Defendant then told Plaintiff to choose from a list of six medications that was taped to the desk. Also taped to the desk was a memo stating "No Benzodiazepines". Plaintiff advised Kononov he was unfamiliar with these medications, how was he suppose to choose. Kononov stated "I will choose for you. Kononov then ordered Plaintiff on medications Buspar and Tegretol and to stop klonopin. Kononov stated "you should be thanking me for giving you an extra seven days to taper off klonopin" as he smiled. Plaintiff informed Kononov his psychiatrist warned him it would take a minimum of six to twelve months to taper off benzodiazepines. Kononov stated "your not at home, Goodbye".

4. Plaintiff was then placed in a bullpen for two days receiving no medication. Plaintiff finally was placed in a segregation cell and received his medication Klonopin on 10/5/13 which had already been cut. The first few days Plaintiff was just receiving Klonopin then Tegretol and Buspar were introduced. After each cut from Klonopin Plaintiffs physical and psychological condition got worse. Plaintiff started experiencing severe withdrawal symptoms. Everytime Plaintiff took Tegretol and Buspar, Plaintiff would get brain zaps, red bumps, rash on chest and arms. Plaintiff would feel like he was autistic. Plaintiff was suffering through severe withdrawal and these new medications caused an adverse reaction and intensified withdrawals.

5. Plaintiff started putting in request slips to the psychiatrist and sick call explaining these symptoms which were never answered and Plaintiff received no medical treatment. Plaintiff also started asking for help from lady handing out medication in which she stated there was nothing she could do that Plaintiff needed to put in request slips to see the doctor.

6. After a few days Plaintiff received no medical attention as his condition was worsening. Plaintiff then started refusing Tegretol due to adverse reactions and told lady handing out medication he needed to see a doctor. The next day Plaintiff received no medication. The day after that, Plaintiff is waiting and waiting by his cell door, it's night time now. Plaintiff sees lady handing out medication and she doesn't come to the Plaintiffs cell. Plaintiff starts banging on his cell door and screaming. Plaintiff finally gets her attention. Plaintiff stated he did not receive his medication and lady stated " I thought you were refusing your meds". Plaintiff stated "No, just the Tegretol" lady then stated "well, I got all this medication to handout, it will be a couple hours to get your meds". She never showed back with medications. Plaintiff received a dose the next day but it was already cut again.

7. Plaintiff started experiencing more severe withdrawal symptoms, gastrointestinal problems, concentration problems, confusion. Plaintiff could no longer read his bible or write letters home. Plaintiff then started having chest pain, arm pain radiating up his neck and trouble breathing. Plaintiffs cell mate then started screaming for a guard to get help. After about 20 minutes a female doctor came to cell. Plaintiffs blood pressure was through the roof, had severe chest pains, trouble breathing and was disoriented. The doctor chalked this up to Plaintiffs panic disorder. She tried to force Plaintiff to hold his breath by placing her hand over his mouth. Plaintiff was startled that she did this and fell back hitting his head on the wall. Plaintiff finally got out that he was being cut from Klonopin and having severe withdrawals. She stated that she could not change the Psychiatrist orders and that I needed to put in a request slip to see him. Plaintiff explained he had already done this and no actions were taken. She then left leaving Plaintiff in his current condition.

8. The next morning Plaintiff received one of his finally doses of Klonopin which immediately made Plaintiff feel better but several hours later his condition worsened adding to the above symptoms. Plaintiff started dry heaving, could not eat or sleep, and having burning sensation over his body. The next day Plaintiff was moved to H2 housing for one night where Plaintiff received his last dose of Klonopin. Plaintiff was then moved to a bullpen for one night receiving no medication waiting to be transferred to Vandalia Correctional Center.

9. On 10/23/13 Plaintiff was transferred to Vandalia Correctional Center. Plaintiff was only able to get about an hour of sleep over the last three days. Every time Plaintiff closed his eyes he would get a jolt or shock running

through his whole body. On the bus ride to Vandalia this terror comes over the Plaintiff and his vision and hearing become distorted. He feels something building up inside him causing more confusion. His socks are totally soaked from sweating but are freezing. It feels like it took 5 days to get to Vandalia but it was only took five hours. Plaintiff started having delusions when he arrived at Vandalia. He thought he was at a haunted psych ward, he was unable to comprehend where he was. His vision is distorted as if he was looking through a fish tank.

10.That evening Plaintiff was processed through intake. After sitting for hours suffering through delusions he was taken with everyone else off the bus to be seen by medical. Plaintiff was processed by nurse "Sue". Plaintiff tries to explain his condition from being taken off Klonopin. Sue looks at his file and states "you only take Tegretol and Buspar". Plaintiff stated "that is what Stateville put me on, I've been on benzodiazepines for almost seven years, I'm messed up pretty bad". Sue then stated "we do not give that medication out here, you will automatically be put in to see the Psychiatrist since your on psych meds but you will have to wait".

11.Plaintiff is then placed into the Segregation Unit with another inmate. Plaintiffs condition is worsening, his body is getting weaker, muscles are starting to cramp and twitch, he has to keep moving his legs to reduce the pain. This pressure starts to build up in his head and it's harder to breathe. Plaintiff lays in his bunk where he starts to hallucinate, images of his family float by his face like a movie reel. This feeling comes across him and he feels compelled to commit suicide, that it would be the only way to stop the suffering.

12.On 10/24/13 this feeling the Plaintiff is having is building up. He feels something bad is about to happen. He looks at his cellmate then starts having a full blown seizure. His cellmate starts screaming for help to no avail. The whole block then starts screaming for help. The guards could not hear them because they had the radio on full blast listening to the Cardinals play in the World Series. The next thing the Plaintiff remembers is lying on the floor in the medical building. He notices nurse Sue walk past and she stated "Oh, he's the one that wants Klonopin, let him lay there". Plaintiff was then forced to walk into another room where his blood pressure was taken which was elevated. Nurse stated to Plaintiff "your pupils are fully blown" she then hands him a kleenex and states " you must of bitten your tongue, you have blood on your mouth". Plaintiff was then placed on a bed and wheeled into a bathroom. Plaintiffs fingers and toes were still clenched closed. Plaintiff was in and out of consciousness. Plaintiff was then requested to give a urine sample. The sole purpose of this sample was to check the Plaintiff for illegal

drugs. Awhile later nurse "Bob" kicked the bed and stated "get up". He stated "you came back clean, you can go sleep in your own bed. The doctor won't be in until Monday". Plaintiff was still in a confused state, his body trembling inside, his vision is worse, hands and feet still clenched. Nurse Bob then stated "go, get out of here, you can walk back to the dorm". Plaintiff remembers walking outside where it was below freezing outside, barefoot, no shoes or jacket, just a yellow jumpsuit. A few seconds later a guard came outside stating "he's an asshole, sit here and I will go get the van". Plaintiff was then taken back to his cell.

13.On 10/25/13 Plaintiff is still experiencing all the symptoms stated above and starts to develop new ones. Plaintiff starts to hear voices and whispering in his ears, his head hurts real bad, he can't eat, heart feels like it is skipping beats and its still hard to breathe. The burning sensation is now over Plaintiffs whole body, all he can do is just lay there. That feeling is building back inside him and the whispers are getting louder, the walls seem like they are moving. Plaintiff tells his cellmate before he has another seizure. His cellmate starts screaming for help. A guard walks by and says the nurse is around the corner, she is delivering meds. The nurse came to the front of Plaintiffs cell. Plaintiff stated he thinks he is dying, he does not feel right. Nurse stated "you need to take your medicine". Plaintiff stated "I can't it makes things worse". Then the Nurse stated "that's all your going to get, you need to tuff it out, the doctor will be here on Monday". Plaintiff is denied any medical treatment. Through that night and over the weekend the Plaintiffs body keeps tensing up uncontrollably. His teeth are clinching together and the pressure is so great his teeth start to break and crack. His head hurts worse and he starts to get his pressure through his head and down his neck, over his shoulder and around his chest. It feels like a big hand has grabbed him and is squeezing the air out. Plaintiff just lay there hoping to die. Hours pass and he didn't die. The hand had let go. At this point the Plaintiff does not know what's real or not. It feels like flies keep landing on his burning skin. His jaw is hurting and his vision seems to be getting dimmer. He is losing weight by the hour and can't sleep.

14.On 10/28/13 Plaintiff was finally called to the medical unit. Plaintiff meets with Defendant Dr. Caldwell and explains all the symptoms. Plaintiffs hands are still clenched. Dr. Caldwell seemed real worried. He stated to the nurse taking notes "this is a hot topic, he needs to be seen by Psychiatrist Dr. Patil today". He then stated to Plaintiff "I think you are out of the woods, I cannot do anything about your medication because that is the Psychiatrist job". Plaintiff was then escorted to the waiting area to meet with Dr. Patil. Plaintiff sat there all day suffering all these symptoms. It is now past 5pm, a guard

comes up to Plaintiff and tells him to go stand outside and wait for an escort back to the dorm. Plaintiff stated "I need to see the psychiatrist, I need help". The guard stated that all the doctors went home and Plaintiff would be put on the list for the next time the psychiatrist comes in. Plaintiff is then escorted back to segregation where he is then moved to B Dorm where he would spend the rest of his time in IDOC.

15. Plaintiff is finally able to use the phone when he arrived at B Dorm. Plaintiff is standing at the phone but cannot remember his mother's home phone number in which he has known since 1989. Plaintiff had to go through paperwork he initially filled out when entering IDOC to find the phone number. Plaintiff contacted his mother and explained the best he could what was happening to him. Plaintiff's mother is in shock. She starts calling IDOC to get her son help. She spoke with the warden and counselor who assured her that Plaintiff was being taken care of.

16. On 10/29/13 Plaintiff was called to the Psychologists office Don Mattingly. Mattingly asked the Plaintiff what was going on, why was his mother calling IDOC. Plaintiff explained the best he could under the condition he was in. Plaintiff stated he needed help, that you guys have me messed up. Mattingly then checked Plaintiffs file and stated Plaintiff was scheduled to see the Psychiatrist, to be patient and he would check into it.

17. Over the next week the Plaintiff is still experiencing severe withdrawal symptoms, his body is tensing up and his teeth are clenching, cracking and chipping. At one point Plaintiff went totally blind. Plaintiff freaked out and was screaming waking another inmate who was sleeping. The inmate tried calming down the Plaintiff. After several minutes the Plaintiffs vision came back but was distorted. Plaintiff then started experiencing the ground move underneath him, stationary objects moving, started having intrusive memories from when he was a child and having flashbacks. These are all in addition to the above mentioned severe withdrawal symptoms.

18. On 11/4/13 Plaintiff was finally called to see the Psychiatrist, Dr. Patil. Plaintiff explains all the severe withdrawal symptoms after a psych history. Plaintiff explains he is suffering severe withdrawal for weeks now. Plaintiff explained his mother has been seeking help for him and talking with outside doctors and calling IDOC. Plaintiff explains he knows what's going on with him through his mother's research and the only way to stop these severe withdrawal symptoms is to be reinstated on benzodiazepines and to be taken off of it correctly. Dr. Patil stated "I can't give you Klonopin, if you were my patient on the outside I could but I'm not allowed in here" . Dr, Patil then placed Plaintiff on Celexa and stated it should help. Plaintiff requested to be

placed on Doxepin, that through his mother's research she found that Doxepin might help for sleep during severe withdrawals. Dr. Patil stated he could place Plaintiff on that.

19. Over the next month what the Plaintiff knows now to be convulsions has stopped. He was still experiencing all the above symptoms and new ones started to develop. His body was numb and he couldn't feel himself urinate or deficate, he just sits or stands in front of toilet and hopes to go. He is embarrassed to say he has had a couple accidents due to this, His vision is being distorted, peoples faces and heads seem to be alien and elongated. Everything looks like its in two-dimensional like cardboard cutouts. He can't look at bright colors as the are exaggerated and he can barely open his eyes in the sunlight. He has no depth perception and anything that enters into his limited vision startles him. His head is filled with a frenzy, his memory is unable to recall names and places. The confusion is worse. His brain feels like it is turning in his head and causes extreme pain. His emotions are flat and doesn't feel anything. He feels he's living in a psychedelic world. He is weak and has no energy. He lays in his bunk all day in fear because he is unable to protect himself.

20. On 12/2/13 Plaintiff is scheduled to see Psychiatrist Patil. The medications are exacerbating the already severe withdrawals. The Plaintiff has a better understanding of benzodiazepine withdrawal and can't wait to explain this information to Dr. Patil. Dr. Patil never showed up and Plaintiffs appointment was canceled. Plaintiff called his mother and she starts sending in literature on benzodiazepine withdrawal. She has talked to everyone she possibly could in IDOC and keeps getting the run around. Plaintiff then meets with the Psychologist Mattingly and gives him the literature his mother sent in. Plaintiff explains to Mattingly he is messed up and needs help. Mattingly makes copies of this literature and states he will pass it along to Psychiatrist Patil.

21. Through the rest of December and Into January Plaintiff is still experiencing severe withdrawals. Plaintiff starts cheeking his medication Celexa to bring back to the dorm so he can start tapering off it, making small cuts. Plaintiff felt he had no choice since this medication is exacerbating withdrawals and the psychiatrist canceled.

22. On 1/9/14 Plaintiff is scheduled to see the psychiatrist . Dr. Patil shows up this time. Plaintiff explains he is still messed up and needs help. That the medications were making withdrawals more intense. Plaintiff asked Dr. Patil if he received the literature from Psychologist Mattingly. Patil had no idea what he was referring to. Plaintiff then explained to Patil what this literature stated.

Plaintiff stated he needed to be taken off Celexa and then Doxepin. Patil disagreed and wanted to up the dose on the Celexa. Plaintiff stated "No". Patil then wanted to place Plaintiff on Remeron, Plaintiff stated he knew what that medication was and did not want to take it. Patil then suggested to place Plaintiff on medication Clonidine. Plaintiff refused stating he read about that medication and it is not advised to take it during withdrawal. Patil then took Plaintiff of Celexa with no taper. Plaintiff was continued on Doxepin for sleep. Patil is still refusing the Plaintiffs medical needs for severe benzodiazepine withdrawal.

23.Through January and February Plaintiff is still suffering through severe withdrawal symptoms. Plaintiff was receiving emotional support through his families phone calls and visits. Plaintiff starts writing Grievances with the help of another inmate to obtain proper medical help that he was not getting. It was hard for the Plaintiff to form ideas and thoughts on his own. Plaintiff did not receive any responses on his first few grievances. Plaintiff questioned psychologist Mattingly about them. Mattingly stated "they probably got thrown away, their good at that". Plaintiff explains again what he is going through. Plaintiff filed another grievance which went through and was denied.

24.On 2/24/14 Plaintiff sees the psychiatrist again. Plaintiff again explains the severe withdrawal symptoms he is experiencing. After months Patil stated "it is impossible for someone to withdrawal after 10-14 days". Plaintiff stated "What!, what is wrong with me then?" Patil stated "I don't know". Plaintiff then asked "why are you prescribing me medication then?" Patil then asked the Plaintiff to leave his office. After stopping the Celexa Plaintiff could tell the Doxepin was also causing withdrawals to intensify and he was having interdose withdrawals. Plaintiffs sleep was improving enough he believed he did not need it anymore. Plaintiff started tapering Doxepin on his own with the knowledge of Dr. Patil stopping medications "cold turkey".

25.On 2/25/14 Plaintiff met with Psychologist Mattingly and explained what had happened with Dr. Patil. Plaintiff explained that Patil refuses to recognize benzodiazepine withdrawal and the suffering he is going through. Mattingly stated he would talk with Patil and go to Plaintiffs next appointment.

26.Through March and April Plaintiff is still experiencing severe withdrawal symptoms which are now waxing and waning in severity. Plaintiff has given up on receiving any help within IDOC by Wexford Health employees. Plaintiff now knows the only thing that will stop these severe withdrawals is to be reinstated on benzodiazepines. Plaintiff knows the only help he will receive is through time and family support.

27. On 4/24/14 Plaintiff was schedule to see Psychiatrist Patil again in which Patil had canceled again. Plaintiff is rescheduled to see Patil again on 5/8/14.

28. On 5/8/14 Plaintiff meets with Dr, Patil but Psychologist Mattingly was nowhere to be found. Plaintiff again stated to Patil all the severe symptoms he was experiencing. Plaintiff then requested to be taken off Doxepin. Patil then wanted to place Plaintiff on another medication in which the Plaintiff refused knowing any foreign substance introduced to the brain during benzodiazepine withdrawal would result in adverse side effects and exacerbate withdrawals. Patil then wanted to keep Plaintiff on Doxepin but he did not have to take it. Plaintiff was confused by this and refused. Patil again took Plaintiff off this medication cold turkey.

29. Plaintiff was released on 7/21/14. Plaintiff still suffers from withdrawal symptoms affecting him to date. Plaintiff still experiences visual disturbances, burning sensations, head pain, frenzy/chaotic feelings and confusion, memory problems, chronic fatigue, restless leg syndrome, gastrointestinal issues, insomnia, derealization and depersonalization, certain fears and phobias. Plaintiff is unable to drive due to visual disturbances. These symptoms are in addition to his underlying diagnosis of PTSD, Panic and Anxiety disorders.

## STATEMENT OF CLAIM

Now comes the Plaintiff Joshua A. Gabor [PRO SE] filing civil suit **pursuant to 42 U.S.C. §1983** against Defendants, Wexford Health Sources Incorporated and its employees Dr. Vitali Kononov, Dr. Jagannath Patil, Dr. Reynal Caldwell for violation of Plaintiffs civil rights, medical malpractice and negligence.

1. Plaintiff was incarcerated into the Illinois Department of Corrections{IDOC} on 10/3/13 and was an inmate of Stateville Correctional Center Northern Receiving Center.

2. Defendant Wexford Health Sources Incorporated is the contracted healthcare provider for the Illinois Department of Corrections through the duration of complaint. 10/3/13 - 7/21/14

3. Defendant Wexford Health being the contracted healthcare provider had the duty owed to the Plaintiff to provide appropriate healthcare for and not cause injury to Plaintiff, Plaintiff being an inmate of IDOC and has no other option for care.

4. Defendant Wexford had at the time of the occurrence had one or more policies and/or practices of not providing and recklessly discontinuing Benzo drugs to detainees such as the Plaintiff, knowing there was a likelihood these policies would ultimately lead to injuries such as occurred to the Plaintiff.

5. That with no rational medical reason, The Defendant, only for cost saving practices, and in total disregard to the Plaintiff's life and safety recklessly altered the Plaintiffs successful treatment of PTSD, Panic Disorder and Anxiety Disorder of benzodiazepines causing life threatening injuries and relapse of original diagnosis.

6. Defendant Wexford Health Sources Incorporated breached this duty for failure to use and have their employees use clinically approved standard practice guidelines for discontinuation of benzodiazepines.

7. That the failure for Defendant Wexford Health Sources Incorporated to use a clinically approved standard practice guideline is the direct cause of the Plaintiffs life threatening symptoms, physical and mental injuries, pain and suffering, mental anguish and full blown withdrawal syndrome.

8. On 10/3/13 Defendant Dr. Vitali Kononov is employed as a Psychiatrist by Wexford Health Sources Incorporated working at Stateville Correctional Center and has the duty to provide psychiatric care for and not injure the Plaintiff.

9. That on 10/3/13 Defendant Kononov during intake examined Plaintiff entering into Stateville Correctional Center Northern Receiving Center. Defendant Kononov failed to use any clinically approved standard practice guideline accepted by other professionals in his field of psychiatry and breached the duty of care to the Plaintiff.

10. That Defendant Kononovs failure to use accepted practice guidelines for discontinuation of benzodiazepines and failure to monitor the Plaintiff for withdrawal symptoms is the direct cause for the Plaintiffs life threatening symptoms, physical and mental injuries, pain and suffering, mental anguish and full blown withdrawal syndrome.

11. Defendant Dr. Reynal Caldwell is employed as a Medical Doctor by Wexford Health Sources Incorporated and works at the Vandalia Correctional Center and has the duty to provide medical care and not cause injury to the Plaintiff, Plaintiff being an inmate of the Illinois Department of Corrections.

12. Defendant Caldwell breached his duty by failure to treat Plaintiff while being the on call medical doctor on the evening of 10/24/13. Defendant Caldwell failed to treat Plaintiff and never responded to emergency call to examine, conduct test or monitor Plaintiff when presenting with life threatening

seizures and severe withdrawal symptoms. Defendant Caldwell's inaction led to delayed and no medical treatment by a licensed medical doctor to the Plaintiff, leaving the Plaintiff to suffer from continued life threatening seizures, convulsions and severe withdrawal symptoms.

13. On 10/28/13 Defendant Caldwell finally examines the Plaintiff and senses the urgency of the Plaintiffs symptoms and refers the Plaintiff as a "Hot Topic" to the Psychiatrist. Although Defendant Caldwell senses this urgency, the Defendant fails to follow any clinically approved standard practice guideline for a patient presenting with severe withdrawal symptoms from benzodiazepines and treat the Plaintiff. Defendant Caldwell's inaction to treat along with his failure to follow through with his referral to the psychiatrist caused delay and avoidable severe withdrawal symptoms leading to pain and suffering.

14. Defendant Dr. Jagannath Patil is employed as a Psychiatrist by Wexford Health Sources Incorporated working at the Vandalia Correctional Center and has the duty to provide psychiatric care and not cause injury to the Plaintiff, Plaintiff being an inmate of the Illinois Department of Corrections.

15. On 11/4/13 Defendant Patil meets with Plaintiff after ignoring referral by Dr, Caldwell on 10/28/13 delaying treatment. Defendant Patil fails to follow any clinically approved standard practice guideline for a patient presenting with severe withdrawal symptoms from benzodiazepines discontinuation and treat the Plaintiff breaching his duty of care, causing continued neglect and avoidable severe withdrawal symptoms leading to continued pain and suffering, physical and psychiatric injury and mental anguish.

16. Defendant Patil's actions and inactions listed in NATURE OF CASE paragraphs 14-29 shows continued neglect to follow a clinically approved standard practice guideline accepted by other professionals in his field of psychiatry leaving the Plaintiff untreated, continued suffering and leading to a full blown withdrawal syndrome.

17. Plaintiff exhausted all administrative remedies by verbal complaints to doctors, request slips, grievances, appeals process of grievances, phone calls to prison officials by family members.

## <u>COUNT I- Denial of Due Process/Eighth Amendment</u>
## (Plaintiff v. Individual Defendants)

1. The Plaintiff re-alleges the all allegations contained in this complaint.
2. The Plaintiff has a fundamental Fifth Amendment Due Process right, as well as Eighth Amendment right, incorporated to the State and local municipalities

through the Fourteenth Amendment, to be treated for his serious medical conditions while in the custody of IDOC.

3. The Individual Defendants had a duty to provide this medical/psychiatric treatment, and/or ensure such care was provided.

4. That with no rational medical reason, The Defendant, only for cost saving practices, and in total disregard to the Plaintiff's life and safety recklessly altered the Plaintiffs successful treatment of PTSD, Panic Disorder and Anxiety Disorder of benzodiazepines causing life threatening injuries and relapse of original diagnosis.

5. The Individual Defendants acted knowing the Plaintiff was in urgent need for a serious medical condition caused by said Defendants, but acted with deliberate indifference in failing to provide such treatment and/or failing to ensure such treatment was provided. As a result of these actions or inactions, the Plaintiff suffered serious injuries, as described in this complaint.

**WHEREFORE,** pursuant to 42 U.S.C.§ 1983, the Plaintiff Joshua A. Gabor demands compensatory and punitive damages against the Individual Defendants, plus costs of this action, attorney's fees and such other and additional relief as this court deems equitable and just.

## COUNT II- *Monell* Count Against Defendant Wexford Health Sources Inc.

1. The Plaintiff re-alleges all allegations contained in complaint.

2. The Plaintiff has a fundamental Fifth Amendment Due Process right, as well as Eighth Amendment right, incorporated to the State and local municipalities through the Fourteenth Amendment, to be treated for his serious medical conditions while in the custody of IDOC.

3. Defendant Wexford, a for-profit company acting under color of law, had a duty to provide this medical/psychological treatment, and/or ensure such care was provided.

4. Defendant Wexford was charged with promulgating directives, guidelines and procedures to ensure detainees such as the Plaintiff be provided proper medical/psychiatric treatment.

5. Defendant Wexford had at the time of the occurrence had one or more policies and/or practices of not providing and recklessly discontinuing Benzo drugs to detainees such as the Plaintiff, knowing there was a likelihood these policies would ultimately lead to injuries such as occurred to the Plaintiff. These policies include, but are not limited to, a practice and/or policy of failing to train its psychologist/psychiatrist, Doctors and/or nurses and/or medical directors as to the proper standard of care to be applied to individual that were being discontinued off benzo drugs and failing to supplement and properly wean an individual off benzo drugs in order to make a greater profit, knowing this would likely result in a denial of proper medical care for IDOC inmates such as the Plaintiff. As a result of Wexford's actions, the Plaintiff suffered injuries, as described more fully above.

6. Defendant Wexford encouraged, adopted and/or recklessly allowed the actions described in this complaint to occur. The violations and injuries suffered by Plaintiff were a foreseeable result of the policies, practices, customs and deliberate indifference of Wexford Health Source Inc.

**WHEREFORE,** pursuant to 42 U.S.C.§ 1983, the Plaintiff Joshua A. Gabor demands compensatory and punitive damages against Defendant Wexford, plus costs of this action, attorney's fees and such other and additional relief as this court deems equitable and just.

## COUNT III - MEDICAL MALPRACTICE/NEGLIGENCE

(Plaintiff v. Defendant, Wexford Health Sources Incorporated)

1. The Plaintiff re-allege all of the allegations contained in complaint.

2. Defendant Wexford had at the time of the occurrence had one or more policies and/or practices of not providing and recklessly discontinuing Benzo drugs to detainees such as the Plaintiff, knowing there was a likelihood these policies would ultimately lead to injuries such as occurred to the Plaintiff.

3. That with no rational medical reason, The Defendant, only for cost saving practices, and in total disregard to the Plaintiff's life and safety recklessly altered the Plaintiffs successful treatment of PTSD, Panic Disorder and Anxiety Disorder of benzodiazepines causing life threatening injuries and relapse of original diagnosis.

4. That on October 3, 2013, and thereafter, the Defendant by and through their Psychiatrist, Doctors, Nurses and Medical Staff breached the applicable standard of medical care owed to Plaintiff Joshua A. Gabor.

5. That as a direct result of the negligence and breaches of the applicable standard of medical care by the Defendant, by and through its Psychiatrist, Doctors and Medical staff, the Plaintiff sustained life threatening seizures, convulsions and severe withdrawal symptoms causing a full blown withdrawal syndrome, physical and psychiatric injury, pain and suffering and mental anguish.

**WHEREFORE:** The Plaintiff Joshua A. Gabor claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of Illinois, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## COUNT IV - MEDICAL MALPRACTICE/NEGLIGENCE

(Plaintiff v. Defendant, Dr. Vitali Kononov)

1. The Plaintiff re-allege all of the allegations contained in complaint.
2. That the Defendant acted with negligent care due to cost saving policies and practices set forth by Wexford for discontinuation of benzodiazepines and recklessly and abruptly taken Plaintiff off medication Klonopin(benzodiazepine) failing to follow any clinically approved standard practice guidelines.
3. That with no rational medical reason, The Defendant, only for cost saving practices, and in total disregard to the Plaintiff's life and safety, recklessly altered the Plaintiffs successful treatment of PTSD, Panic Disorder and Anxiety Disorder of benzodiazepines causing life threatening injuries and relapse of original diagnosis.
4. That Defendant failed to follow any clinically approved standard practice guideline and monitor the Plaintiff for severe withdrawal symptoms from abrupt discontinuation of benzo's.
5. That on October 3, 2013, and thereafter, the Defendant breached the applicable standard of care owed to Plaintiff Joshua A. Gabor.
6. That as a direct result of the negligence and breaches of the applicable standard of care by the Defendant, the Plaintiff sustained life threatening seizures, convulsions and severe withdrawal symptoms causing a full blown withdrawal syndrome, physical and psychiatric injury, pain and suffering and mental anguish.

**WHEREFORE:** The Plaintiff Joshua A. Gabor claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of Illinois, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## COUNT V - MEDICAL MALPRACTICE/NEGLIGENCE
(against Defendant, Dr. Reynal Caldwell)

1. The Plaintiff re-allege all of the allegations contained in complaint.
2. The defendant failed to follow any clinically approved standard practice guideline when the Plaintiff presented with severe withdrawal symptoms from benzodiazepines.
3. That due to cost saving and life threatening practices Wexford has in place, the defendant left the Plaintiff untreated.
4. That on October 24, 2013 and thereafter, the Defendant breached the applicable standard of care owed to the Plaintiff Joshua A. Gabor.
5. That as a direct result of the negligence and breaches of the applicable standard of care by the Defendant, the Plaintiff sustained life threatening seizures, convulsions and severe withdrawal symptoms causing a full blown withdrawal syndrome, physical and psychiatric injury, pain and suffering and mental anguish.

**WHEREFORE:** The Plaintiff Joshua A. Gabor claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of Illinois, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## COUNT VI- MEDICAL MALPRACTICE/NEGLIGENCE
(against Defendant, Jagannath Patil)

1. The Plaintiff re-allege and incorporate by reference herein all of the allegations contained in complaint.
2. That on October 28, 2013 and thereafter, the Defendant breached the applicable standard of care owed to the Plaintiff Joshua A. Gabor. Defendant

failed to follow any clinically approved standard practice guidelines with a patient presenting with severe withdrawal symptoms.

3. Defendant failed to treat Plaintiff due to cost saving and life threatening practices by Wexford.

4. Defendant negligently ignored the Plaintiffs symptoms and added medications that exacerbated the life threatening conditioned caused by Wexford and its employees.

5. That as a direct result of the negligence and breaches of the applicable standard of care by the Defendant, the Plaintiff sustained convulsions and severe withdrawal symptoms causing a full blown withdrawal syndrome, physical and psychiatric injury, pain and suffering and mental anguish.

**WHEREFORE:** The Plaintiff Joshua A. Gabor claim monetary damages against the Defendant in an amount that exceeds the jurisdiction of the District Court of Illinois, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## Relief

The Plaintiff Joshua A. Gabor claim monetary damages against the Defendants in an amount that exceeds the jurisdiction of the District Court of Illinois, to be determined at trial, plus costs, and for any further relief that this Honorable Court determines necessary and appropriate.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS IN THIS MEDICAL MALPRACTICE/NEGLIGENCE ACTION.

# CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ____10TH____ day of ____September______, 2015

Josh Gabor

(Signature of plaintiff)

Joshua A. Gabor
1909 N Kennedy LN
Normal, IL 61761